SOUTH PUERTO RICO SUGAR COMPANY, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-62-250.        Decided April 10, 1964.

---

*Beverley, Castro & Rodríguez,* and *Omar Cancio Sifre* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

South Puerto Rico Sugar Company built a structure to facilitate the storage and shipping of bulk sugar manufactured in the mill it operates on the south coast of Puerto Rico. On December 23, 1954, plaintiff herein informed the Secretary of the Treasury that "we are receiving from Stephens-Adamson Mfg. Co., of Aurora, Illinois, a bulk conveyor system, which, at our request, is arriving in partial shipments. For each shipment we also receive a commercial invoice. Part of this equipment is exempt and part is not pursuant to § 16B of the Internal Revenue Act. As it is difficult for us to determine which part of the equipment being received is taxable by law, we intend to request tax exemption on all the equipment. Once it has been installed, we shall so inform you and request that an Appraiser Engineer be sent in order that we may pay the execise tax on the equipment not exempted."

Later the corporation paid in full the amount of the excise taxes and requested refund on the part it deemed was not taxable. The Treasury Department refused to refund. The taxpayer decided to have that determination reviewed judicially. The court sustained the Secretary. We agreed to review its decision.

The taxpayer alleges that it is only bound to pay on the sum of $276,788.35, which is the cost at the point of origin of the equipment and which, in its opinion, is taxable. The Treasury Department maintains that to that amount

it must add $79,328.78 as the "cost at the point of origin of the structure for the equipment."

1. The issue to be decided is whether "certain pre-cut steel used to support the channels and conveyors" and "the exterior steel structure and sugar bucket elevator" of the system installed to store and ship bulk sugar forms part of an electrical apparatus for the purpose of levying the excise tax prescribed by § 16 (20) of Act No. 85 of April 20, 1925 (13 L.P.R.A. § 1050).[1]

Said Act provided as follows:

"On every electrical or gas apparatus for whatever it may be used, and on all parts and accessories therefor, sold, transferred, used, or consumed in, or introduced into, Puerto Rico, a tax of fifteen (15) per cent on the selling price in Puerto Rico.

"*Provided*, That a machine or equipment whose principal work or objective is not accomplished by electricity or gas, shall not be considered in its entirety as an electrical or gas apparatus; but the additions, features, or devices operated by electricity or gas, and which perform secondary functions within or in connection with said machine or equipment, as well as the accessories for said additions, features or devices, shall be subject to the payment of the excise fixed by this section.

"*Provided, likewise,* That in the case of the introduction into, or the acquisition, sale, use, or transfer in, Puerto Rico, of electrical or gas apparatus without having incorporated thereto the source of power by which they are to be operated, the determination of the fact as to whether or not they are electrical or gas apparatus, for the purpose of this tax, shall be made by the Secretary of the Treasury of Puerto Rico on the basis of the 'predominant normal use' given thereto by the consumers as a group, and it shall be understood that there is a 'predominant normal use' if sixty (60) per cent or more of the number of acquirers of the apparatus in question operate them principally by electric or gas power.

---

[1] The provision in force levying taxes on electrical apparatus is § 22 of Act No. 2 of January 20, 1956, 13 L.P.R.A. § 4022 (1962 ed.).

"*Provided, further,* That excluding the current conducting wire, none of the materials for external installation shall be subject to the tax fixed by this section.

"*Provided, finally,* That within the meaning of electrical or gas apparatus are included—but without it being understood as a limitation—electric current generating plants, dynamos, of all kinds, and compressors."

It should be noted that plaintiff corporation admits —in not requesting refund of the tax paid on most of the installed system—that the installation is an electrical apparatus for tax purposes. In the letter copied above it states that "it is difficult for us to determine which part of the equipment . . . is taxable by law. . . ." Thus, we note that the taxpayer accepts that the system installed to store and to ship bulk sugar is an electrical equipment and that it is doubtful whether certain steel pieces of the system are part of the "electrical apparatus." Which are those parts? "Certain pre-cut steel used to support the channels and conveyors" and "the exterior steel structure and sugar bucket elevator."

The trial court stated that "the equipment and machinery referred to in this case could not operate properly without the channels, and the latter could not function without the steel supports, which while supporting the channels and conveyor system, secures and strengthens the whole equipment." And the court adds: "Said supports are not elements independent from the channels and conveyors, but essential additions thereto without which said channels and conveyors can not carry out their function and purpose."

In other words, the system is an integrated unit. The steel beams that support the channels and the conveyors make a single apparatus. Necessarily it has to be that way. Physically they cannot exist separate from each other.

The appellant argues in its brief that:

"Act No. 140 of May 9, 1945 added the following *proviso* to paragraph 20:

" '*Provided,* That a machine or equipment whose principal work or objective is not performed or attained by electricity or gas, shall not be considered in its entirety as an electrical or gas apparatus, but the additions, features, or devices operated by electricity or gas, and which perform secondary functions within or in connection with said machine or equipment, as well as the accessories for said additions, features or devices, shall be subject to the payment of excises fixed by this subdivision.'

"The above-quoted amendment—in force at the time of the taxable event—had the effect of including fractional imposition as a taxing modality.

"Taking into account the legislative history of subdivision 20, *it follows that the judgment of the trial court would be correct if the taxable event had occurred prior to the 1945 amendment, when the Legislature taxed every electrical apparatus regardless of its use;* but the unavoidable conclusion is that at the time the taxable event occurred, said subdivision had been amended in order to include fractional imposition as a taxing modality." (Italics ours.)

The provision invoked in no way helps the position of the taxpayer. The amendment was to the effect that "a machine or equipment whose principal work or objective is not performed or attained by electricity or gas, shall not be considered in its entirety as an electrical or gas apparatus." The evidence introduced was to the effect that the equipment works by means of different electrical motors. It is completely operated by electricity, for which reason it does not come within the exception of the "*proviso*". And we have already seen that the taxpayer admits that "it must be concluded that the judgment of the trial court would be correct if the taxable event had occurred prior to the 1945 amendment."

But there is still more. The Act imposes the excise tax "on every electrical . . . apparatus . . . , and on all parts and accessories therefor." What is meant by "part" for the

purposes of this provision? Section 3 of Act No. 85 of 1925, as amended, defined the term "part" as follows:

"The term 'part', as used in this subtitle, shall be understood to be any article or object of a solid nature which, although it may be used independently, has been made, and according to its normal and predominant use by consumers as a group, to be attached or built-in, or to form an integral part of the constitution of, any apparatus or article taxed by this subtitle, regardless if said article or objects are exclusively for ornamental purpose.

*"Provided,* That there shall be understood to be 'normal and predominant use' when sixty (60) per cent or more of the consumers in Puerto Rico use said article or object to be attached or built-in, or to form an integral part of the constitution of, any apparatus or article taxed by this subtitle.

"The term 'accessory', as used in this subtitle, shall be understood to be any article or thing of a solid nature elaborated, manufactured or acquired in, or introduced into, Puerto Rico, for the purpose, according to the 'normal and predominant use', or being used in connection with, or subordinate to, any of the apparatus or articles taxed by this subtitle, even if said article or thing is reciprocally propelled or otherwise assisted by a main article.

*"Provided,* That the phrase 'in connection with', for the purposes of this section, include, but without limitation, every function, service, or use given by or derived from, any article or thing which assists, extends, amplifies, directs, sponsors, achieves, enhances, perfects, improves, increases, regulates, accelerates, slows, registers, or measures, the functioning, utility, production, or service of any other main article, both in the basic functions and in the features thereof, but there are excluded from the scope of said phrase the following articles:

"a. Those which, without being built-in the main article, merely brace or support the taxable apparatus, engine, or instrument, or provides a seat to the operator or player, but without including tripods for cameras or projectors."

■ The taxpayer strongly relies on the last paragraph above transcribed as supporting its contention, inasmuch as it provides that the parts which "merely brace or support the

apparatus" are excluded from the scope of the statute. The trouble with this contention is that the exception depends on the parts not being built into the main apparatus, and the trial judge concluded, as a matter of fact, that the whole equipment formed an integrated unit. It is clear that the whole system installed by the appellant for storing and shipping bulk sugar constitutes an electrical apparatus pursuant to § 16(20) of Act No. 85 of August 20, 1925 (13 L.P.R.A. § 1050).

2. It is claimed that the trial court erred in deciding that the plaintiff (defendant) improperly collected the excise tax by applying the rate of 19.8 percent based on the "selling price" in Puerto Rico on the electrical equipment introduced by appellant.

■ Pursuant to § 4A(a) of the former Internal Revenue Law, 13 L.P.R.A. § 964:

"For the purpose of the collection and payment of the taxes or excises levied and prescribed by this subtitle, the term 'selling price' means the cost in Puerto Rico of the articles subject to the payment of excises, plus twenty (20) per cent on said cost.

"A. *Methods for determining the 'cost in Puerto Rico'.*

"(a) When articles subject to the payment of excises have been imported into Puerto Rico from abroad, the 'cost in Puerto Rico' shall mean the cost of said articles at the point of origin, plus ten (10) per cent on said cost, estimated for freight, insurance and other transportation expenses."

Therefore, the "cost" is obtained in the following manner: 100 percent, the cost of the articles at the point of origin, plus 10 percent of said cost, or 110 percent. The "selling price" is obtained by adding 22 percent to 110 percent, or 20 percent of 110 percent, which amounts to 132 percent. The excise tax imposed is 15 percent of 132 percent, which in short is 19.8 percent of the cost at the point of origin. Now, subdivision (c) of said section provides that: "(c) When the articles subject to the payment of excises, due

to the fact of their having been introduced into Puerto Rico by tax-exempt entities, or for any other reason, have not been the object of taxation, and in either case said goods are subsequently sold to persons not exempt from the payment of excises, the 'cost in Puerto Rico' shall mean the price which may have been paid for said goods by the purchaser upon acquiring them; and should there be no sale, the 'cost in Puerto Rico' shall be estimated by the Secretary of the Treasury of Puerto Rico." That is to say, when for the purposes of the imposition the assessment system is used —evidently because of the lack of information regarding cost at the point of origin—the excise tax shall be computed on the basis of 15 percent of the estimated value.

It appears from the evidence submitted that the Secretary of the Treasury used the cost at the point of origin to levy the excise tax in connection with the part of the installation which appellant admitted to be taxable as electrical apparatus. The estimated value was used only for the purpose of taxing the pre-cut steel, valued precisely at the rate of $50 per hundredweight. The Secretary had first applied 19.8 percent to this value, but upon learning that it was an estimated value, he refunded to appellant the sum of $3,807.69. That evidence as believed by the trial court can in no way support appellant's claim, even assuming for the sake of argument, that subdivision (c) was applicable to the situation before us.

Inasmuch as none of the errors assigned were committed, the judgment rendered by the Superior Court, San Juan Part, on July 19, 1962, will be affirmed.